O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| RANGE ROAD MUSIC INC., ET AL. | ) ) ) | Case No. CV 09-2059 CAS (AGRx) |
| Plaintiffs, | ) ) | **ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) ) ) ) | |
| EAST COAST FOODS, INC. AND HERBERT HUDSON; | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | | |

## I. INTRODUCTION

On March 25, 2009, plaintiffs Range Road Music, Inc.; Song/ATV Harmony; Williamson Music Company; Daniel Kuramoto dba Little Tiger Music; Kimo Cornwell dba Omik Music; Terri Koide dba Skhamalee Music; and Universal Music Corporation filed the instant action for copyright infringement, in violation of the Copyright Act, 17 U.S.C. §§ 101 et seq., against defendants East Coast Foods, Inc. ("East Coast") and Herbert Hudson ("Hudson"). Plaintiffs allege eight claims for copyright infringement based on the allegedly unauthorized public performance of plaintiffs' copyrighted musical compositions at the premises owned and operated by defendants. Plaintiffs seek an injunction prohibiting further unauthorized performance of their musical

compositions, under 17 U.S.C. § 502(a); statutory damages of $4,500 per alleged infringement, under 17 U.S.C. § 504(c); and costs, including reasonable attorneys' fees, under 17 U.S.C. § 505. On May 5, 2009, defendants filed an answer asserting a counterclaim for a declaration of non-infringement.

On January 22, 2010, the parties filed the instant cross-motions for summary judgment. Oppositions were filed on February 8, 2010, and replies were filed on February 12, 2010.[1] A hearing was held on March 15, 2010.[2] After carefully considering the arguments set forth by both parties, the Court grants plaintiffs' motion for summary judgment and denies defendants' cross-motion.

## II. BACKGROUND

Plaintiffs are members of the American Society of Composers, Authors and Publishers ("ASCAP") to which they have granted nonexclusive right to license non-dramatic, public performances of their copyrighted musical compositions. Pls.'s Statement of Uncontroverted Facts ("Pls.'s SUF") ¶ 2. At all relevant times, plaintiffs have been and still are the owners of valid copyrights in the following eight musical compositions at issue in this case: "All or Nothing at All," "It's Easy to Remember," "My Favorite Things," "Bob-Hop," "Once Before I Sleep," "One Fine Day," "Only Love," and "Be-Bop" (collectively the "Copyrighted Works"). Id. ¶ 1. As part of ASCAP's obligation to enforce its members' copyrights, ASCAP attempts to license bars, restaurants, nightclubs, theaters, and other establishments that provide musical entertainment to their patrons. Declaration of Douglas Jones ("Jones Decl.") ¶ 3. Such licenses enable businesses to perform copyrighted musical compositions lawfully. According to plaintiffs, when the operators of an establishment refuse to obtain an

---

[1] The parties lodge various evidentiary objections. In so far as the Court does not rely on the evidence which is the subject of such objections, the Court denies the objections as moot.

[2] At the hearing, the Court tentatively indicated that it would deny both motions but after hearing oral argument, took this matter under submission.

ASCAP license, ASCAP may engage an independent investigator to visit the establishment and make note of all the songs being performed that the investigator can recognize. Id. ¶ 4. If ASCAP's members own the copyrights to some of those songs, ASCAP may then institute an action for copyright infringement in the name of its members and against the owners of the establishment. Id.

According to plaintiffs, ASCAP licensing representatives first contacted defendants, via letter dated September 17, 2001, concerning their alleged public performance of musical compositions in the ASCAP repertory at the establishment known as "Roscoe's House of Chicken & Waffles," located at 730 E. Broadway, Long Beach, California ("Roscoe's Long Beach"). Pls.'s SUF ¶ 3. While defendants dispute receiving such a letter or any other communication from ASCAP prior to the filing of the instant suit, it is undisputed that defendants have to date not obtained an ASCAP license. See Defs.'s Statement of Genuine Issues in Opp'n ("Defs.'s SGI") ¶¶ 7-8; Pls.'s SUF ¶ 9. On the evening of May 30-31, 2008, ASCAP investigator Scott F. Greene ("Greene") visited Roscoe's Long Beach, took notes of his visit and prepared a investigative report of the songs he heard performed.[3] Greene Decl. ¶¶ 5,7. In the report, he identified a musical band that performed live music, namely Azar Lawrence & The L.A. Legends (the "Band"), and listed, among other songs, four "live" entertainment musical performances and four "mechanical system" musical pieces, with indications as to the times when the musical compositions were played, that correspond to the eight Copyrighted Works. Id.

For purposes of these cross-motions, the parties dispute the following two issues: (1) whether defendants own and operate Roscoe's Long Beach; and (2) whether the public performances of the eight musical pieces at issue on May 30-31, 2008 were

---

[3] Defendants object to Greene's declaration on the basis that it is improper expert and lay witness opinion testimony, under Fed. R. Evid. 701 and 702, and inadmissible hearsay. The Court overrules defendants' objections on the basis that Greene may properly provide his testimony as a percipient witness.

"substantially similar" to any of the Copyrighted Works.

First, according to plaintiffs, defendant East Coast, a California corporation, is the owner and operator of five restaurants in California doing business as "Roscoe's House of Chicken and Waffles" ("Roscoe's"), one of which is Roscoe's Long Beach. Pls.'s SUF ¶ 3. By contrast, Hudson declares that East Coast only owns and operates four Roscoe's, and does not own the Roscoe's Long Beach. Defs.'s Statement of Uncontroverted Facts ("Defs.'s SUF") ¶¶ 4, 6 (citing Hudson Decl. ¶¶ 5-6). According to defendants, Roscoe's Long Beach is owned and operated by Shoreline Foods, Inc. ("Shoreline"), a California corporation, which has been licensed to use the name Roscoe's and related trademarks at the Roscoe's Long Beach.[4] Id. ¶ 7. In support of this assertion, Hudson declares that since Roscoe's Long Beach opened in 2001, Shoreline has held the fictitious business name statement for the establishment, and has maintained the Seller's Permit issued by the California State Board of Equalization and the Permit to Operate/Annual Health Permit from the City of Long Beach for Roscoe's Long Beach. Hudson Decl. ¶¶ 5-6; Ex. H & I. Further, defendants assert that the public performances at issue occurred at The Sea Bird Jazz Lounge, which is located at the same address as Roscoe's Long Beach, but is allegedly separated physically and operated as a separate

---

[4] The nature of the relationship between East Coast and Shoreline is unclear based on the record. Defendants maintain that the two corporations are "closely associated." In his deposition, Hudson declared that in 2000, representatives of company he described as "Tri-Circle entity or something" came to him and asked for his permission to open a Roscoe's in Long Beach. Hudson Tr. 74:4-75:21. According to Hudson, after he granted Tri-Circle permission, Tri-Circle formed Shoreline to operate Roscoe's Long Beach, but despite the fact that he is currently the President of Shoreline, he could not recall the names of the individuals who were representing the Tri-Circle entity during their business negotiations. Id. at 62:22-63:8. Further, Hudson offers no documentary evidence in support of his assertion that the two corporations are "closely associated." Plaintiffs respond that Tri-Circle and Hudson are the same, noting that in a 2005 lawsuit, Rising Star Dev. And Mgmt. LLC v. Hip Hop Beverage Corp., Case No. 05CV05528, Hudson admitted he was the owner of Tri-circle H, Inc. Mot. at 8; Pls.'s Req. For Judicial Notice ("Pls.'s RFJN") Tab 1.

4

business from Roscoe's Long Beach. Id. ¶ 13. According to defendants, neither Roscoe's Long Beach nor East Coast receives income or revenue from the operation of the Sea Bird Jazz Lounge.[5] Id. ¶ 22. Defendants further assert that Rogers Jackson, who is independent of defendants, operated the Sea Bird Jazz Lounge the evening in question and booked the Band that performed. Id. ¶ 12. Hudson declares that neither he nor any East Coast employee made arrangements for or gave approval for the Band to perform live music. Id. ¶ 17. In support of their assertion that Roscoe's Long Beach, including the lounge/bar area, is in fact owned by East Coast, plaintiffs submit East Coast's liquor license application and the license issued by the California Department of Alcoholic Beverage Control (the "ABC") in 2001 for Roscoe's Long Beach. See Pls.'s Statement of Genuine Issues in Opp'n ("Pls.'s SGI") ¶ 4. In the documents submitted to the ABC in 2001, Hudson declares, under penalty of perjury, that East Coast owns or otherwise controls Roscoe's Long Beach. Id.; McGonigle Decl. ¶ 2. Further, Hudson represents through a drawing submitted in connection with the liquor license application that the restaurant and bar/lounge area of the building are one establishment. Pls.'s SUF ¶ 5; McGonigle Decl. ¶ 3. Plaintiffs therefore assert that Roscoe's Long Beach and Sea Bird Jazz Lounge are in fact the same establishment. Also, although Hudson declares that about five years ago East Coast loaned the liquor license to Shoreline for use at Roscoe's Long Beach, plaintiffs object to such evidence on the basis of Ca. Admin. Code tit. 4, § 60, in that no writing has been produced to support the assertion that East Coast loaned

---

[5] Hudson declares that any person that operates Sea Bird Jazz Lounge retains all income/revenue from such operations, including bar receipts, and does not pay any money to Roscoe's Long Beach or East Coast. Hudson Decl. ¶ 22. Further, he testifies that the only benefit that Roscoe's Long Beach or East Coast receive from the operation of the lounge is incidental publicity and the possibility that customers of the lounge may choose to visit a Roscoe's restaurant for a meal. Id. Plaintiffs object to Hudson's declaration on the basis that it improperly adds to his Fed. R. Civ. P. 30(b)(6) deposition testimony wherein Hudson testified that he had no knowledge of who made the profits for the liquor that was sold at the Sea Bird Jazz Lounge on the night of May 30, 2008. Hudson Tr. At 129:14-19.

its liquor license to Shoreline. Pls.'s SGI ¶ 21. Moreover, plaintiffs assert that the manager of Roscoe's Long Beach, Cuauhtemoc Rodriguez ("Rodriguez") declares that he receives his salary from East Coast, not Shoreline, and is responsible for purchasing the liquor that is sold at the Sea Bird Jazz Lounge.[6] Pls.'s SUF ¶ 5. Rodriguez also declares that Liza Hernandez ("Hernandez") is an employee of East Coast, not Shoreline, and is in charge of all administrative tasks at Roscoe's Long Beach. Id.

As to defendant Hudson, the parties do not dispute that Hudson has been and still is the sole officer and director of East Coast with primary responsibility for the control, management, operation and maintenance of the affairs of the corporation, with a direct financial interest in its operation. Pls.'s SUF ¶ 4; Defs.'s SGI at 2. In addition, Hudson testified that in the past he has "grab[ed] a few dollars" out of East Coast. Hudson Tr. 85:7-17. However, Hudson declares that he is not an owner or shareholder of East Coast. Defs.'s SUF ¶ 5. Hudson is also the President of Shoreline but asserts he is not an owner or shareholder of Shoreline. Id. ¶ 7.

The second disputed issue is whether the Band in fact performed plaintiffs' Copyrighted Works, as indicated in Greene's investigative report. Because Greene did not record any of the live or mechanical music played or publicly performed the evening in question, nor did he prepare sheet music of any of the music, defendants assert that plaintiffs' evidence of copyright infringement is insufficient as a matter of law.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

---

[6] By contrast, Hudson declares that Rodriguez is a "managerial consultant" provided by East Coast to Roscoe's Long Beach. Defs.'s SUF ¶ 9. As such, they assert that he is an employee of Shoreline and is paid by East Coast. Id.

6

elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**III. DISCUSSION**

Both parties seek summary judgment on the issue of whether defendants may be held vicariously liable for the allegedly authorized public performances of plaintiffs'

Copyrighted Works.[7]

Under the Copyright Act, the owner of a copyright in a musical composition has the exclusive right, among others, to perform the copyrighted work publicly and to authorize others to do so.[8] See 17 U.S.C. § 106(4). Anyone who violates this exclusive right is an infringer of the copyright. Id. § 501(a). To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act. See A & M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). In this case, plaintiffs must prove five elements: (1) the originality and authorship of the compositions involved; (2) compliance with the formalities required to secure a copyright; (3) plaintiffs' ownership of the copyrights of the relevant compositions; (4) public performance of the compositions; and (5) defendant's failure to obtain permission from the plaintiffs or their representatives for such performance. See, e.g., Durney v. WaveCrest Lab., LLC, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005). The theory of secondary liability is distinct from the theory of direct infringement. A defendant is

---

[7] Defendants contend that plaintiffs' complaint does not specifically allege a theory of liability, and thus they are barred from pursuing any theory of secondary liability. Mot. at 17-18. Plaintiffs respond that their failure to use the term "vicarious liability" in the complaint does not bar them from pursuing such a claim given that the complaint adequately pleads vicarious liability against both defendants. Opp'n at 11-12. The Court finds that defendants' objection to the adequacy of notice provided by the complaint more properly raised on a motion to dismiss. In any event, given the liberal notice-pleading system and that plaintiffs allege that East Coast and Hudson operate, control, and derive financial benefit from Roscoe's Long Beach where the alleged infringements occurred, Compl. ¶¶ 4-5, the Court finds that the facts alleged in plaintiffs' complaint are sufficient to put defendants on notice of the basis upon which infringement liability might attach. Defendant's reliance on Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009), is misplaced because the issue in that case was whether plaintiff was barred from first asserting a theory of secondary liability on appeal when no such claim was made in the trial court.

[8] To "perform" a work means "to recite, render, play, dance or act it, either directly or by means of any device or process." 17 U.S.C. § 101.

vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and "has the right and ability to supervise" the infringing activity. See Napster, 239 F.3d at 1022; Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701, 729 (9th Cir. 2007). Accordingly, liability for copyright infringement can extend to those who own or control the premises where the infringing conduct occurred, have the right and ability to supervise those responsible for the infringing conduct, and derive direct financial benefit from infringing performances on those premises. See, e.g., Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004); Napster, Inc., 239 F.3d at 1013; Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996) (discussing the history of so-called "dance hall cases," where the operator of an entertainment venue was held liable for infringing performances when the operator (1) could control the premises and (2) obtained a direct financial benefit from the audience, who paid to enjoy the infringing performance); see also Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.18[B] (2009) (discussing similar ASCAP infringement actions against purveyors of music).

In this case, plaintiffs' ownership of the Copyrighted Works is not disputed and defendants do not assert that they obtained a license to perform such musical compositions. The relevant legal questions are whether the Copyrighted Works were publicly performed at Roscoe's Long Beach/Sea Bird Jazz Lounge, on the night in question, thus directly infringing plaintiffs' copyrights and whether defendants may be held vicariously liable for such direct infringement.

### A. Whether Hudson and East Coast Are Proper Defendants

Plaintiffs contend that defendants may be held vicariously liable for the unauthorized public performance of the Copyrighted Works because East Coast owns, operates, and controls the establishment where the infringing performances occurred. Plaintiffs further contend that Hudson has dominant influence in East Coast to control the acts of this corporation. In this regard, plaintiffs argue that the Hudson declaration should be disregarded because defendants cannot create a genuine issue of material fact

by contradicting Hudson's prior admissions or sworn statements through unsupported declarations prepared specifically for the purpose of opposing summary judgment. Mot. at 10 (citing Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.")); see Block v. City of Los Angeles, 253 F.3d 410, 419 n.2 (9th Cir. 2001); see William W. Schwarzer, Federal Civil Procedure Before Trial 14:166 (Rutter Group 2009); but see Leslie v. Grupo ICA, 198 F3d 1152, 1153 (9th Cir. 1999) (finding that the so-called "sham affidavit" rule does not apply where the party's declarations and deposition testimony are consistent but are contradicted by other unsworn evidence, in this case the party's own letters, makes the party's claims incredible).

The Court finds that defendants have not raised a material issue of fact as to the issue of whether East Coast is the owner of, and controls, both Roscoe's Long Beach and the Sea Bird Jazz Lounge area. Defendants do not submit any application to transfer the liquor license held by East Coast as to those premises, or other writing to support Hudson's naked assertion that the East Coast liquor license was transferred, or for that matter loaned, to Shoreline after his 2001 liquor license application was approved.[9] Nor do they submit documentary evidence that the Sea Bird Jazz Lounge is not owned by East Coast. The liquor license application and the payroll records for employees of the

---

[9] California law provides that "[n]o person shall exercise the privilege or perform any act which a [liquor] licensee may exercise or perform under the authority of a [liquor] license unless the person is authorized to do so by a [liquor] license issued to pursuant to this division." Cal. Bus. & Prof. Code § 23300. To transfer a license, "[t]he transferee shall make application to the department for a [liquor] license of the type to be transferred and shall meet all the qualifications required of an original application for such license." Further, "[n]o [liquor] license may be issued or transferred to any person unless he owns or otherwise has possession and control, or a right to possession and control, of the premises for which he makes application for a license, evidence by an instrument in writing or by other clear and convincing proof." Cal. Admin. Code Tit. 4, Div. 1, Article 11 § 60(m), 4 Cal. Code Regs. § 60. No provision authorizes the "loaning" of a liquor license.

Sea Bird Lounge are all to the contrary. Thus, based on the record, the Court finds that both East Coast and Hudson, as the sole officer and director of East Coast, own, operate, and otherwise control the premises where the alleged infringing conduct occurred, and that they derived financial benefit, including food and liquor sales, from the performances at issue. Accordingly, defendants may be held vicariously liable for the alleged infringing conduct. See, e.g., Foreverendeavor Music, Inc. v. S.M.B., Inc., 701 F. Supp. 791, 793-94 (W.D. Wash. 1988) (holding president of defendant corporation individually liable for the unauthorized performance of plaintiffs' copyrights at restaurant owned by corporation); Sailor Music v. Mai Kai of Concord, Inc., 640 F. Supp. 629, 633 (D. N.H. 1986) ("It is well established that a corporate office will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement."); see also Old Brompton Road v. Southern Comfort Foods, Inc., 879, 882-83 (W.D. Wash. 1988).

**B.     Whether the Copyrighted Works Were Publicly Performed**

Defendants contend that even if it could be said that they own and operate Roscoe's Long Beach/Sea Bird Jazz Lounge, summary judgment on the issue of secondary liability should be granted in defendants' favor because there are no genuine issues of material fact as to whether any public performance that occurred on the night in question was in fact of the Copyrighted Works, and thus whether plaintiffs can prove a claim of direct infringement. Mot. at 7. Defendants argue that because plaintiffs have no tangible evidence, such as an audio recording, of the musical performances at issue, no comparison to plaintiffs' Copyrighted Works can be made to determine the element of "substantial similarity."[10] Id. at 9-12. Further, they argue that Greene's investigative

---

[10] A plaintiff bringing a claim for copyright infringement must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Absent
(continued...)

report and testimony is insufficient to demonstrate a triable issue of fact because his "skills and perceptions in identifying and/or matching musical titles and identifying musical groups is highly suspect and may have been pure guesswork."[11] Id. at 15. Plaintiff responds that while "substantial similarity" is material to the issue of plagiarism, it is irrelevant in a case of unauthorized public performance. Opp'n at 7-10 (citing e.g., Major Bob Music v. Stubbs, 851 F. Supp. 475, 479 (S.D. Ga. 1994) (finding that the "degree of similarity to the original is irrelevant if the work is held out to be a performance of the copyrighted composition")). Accordingly, they contend that Greene's uncontroverted testimony and report constitute prima facie evidence of public performance of plaintiffs' Copyrighted Works. Id. at 9 (citing, e.g., Odnil Music Ltd. v. Katharsis LLC, 2006 WL 2545869, *5 (E.D. Cal. Jul. 21, 2006) (finding Greene's trial testimony established performance of plaintiffs' songs); Major Bob Music, 851 F. Supp. at 479 ("[I]t is well settled that investigator's affidavits that are uncontradicted are conclusive proof of performance.")).

While defendants challenge the credibility and/or ability of Greene to accurately identify the Copyrighted Works as being the musical pieces actually performed on the evening of May 30-31, 2008, defendants do not submit any evidence to controvert Greene's testimony. To withstand a motion for summary judgment, it is not sufficient for the opposing party to simply raise issues as to the credibility of the moving party's

---

[10](...continued)
evidence of direct copying, "proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" See, e.g., Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000). "When the issue is whether two works are substantially similar, summary judgment is appropriate if no reasonable juror could find substantial similarity of ideas and expression." Funky Films Inc. v. Time Warner Entertainment Co., 462 F.3d 1072, 1076 (9th Cir. 2006).

[11] Defendants also contend that because plaintiffs failed to submit declarations of members of the Band to prove direct infringement, they have failed to meet their burden for the instant motions. Mot. at 10.   Id.

evidence. See Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983). Thus, the Court finds that based on plaintiffs' uncontroverted evidence, plaintiffs' Copyrighted Works were publicly performed. See Odnil, at *5; Nimmer on Copyright, supra, § 8.19[B] (noting that courts routinely dispose of similar ASCAP cases on summary judgment and award ASCAP member plaintiffs statutory damages, attorneys' fees and injunctive relief); cf. Chappell & Co., Inc. v. Costello's Tavern, Inc., 429 F. Supp.2d 354, 359-60 (D. Mass. 2006) (finding triable issue fact regarding the issue of whether plaintiffs' songs were performed because defendants submitted supporting evidence challenging the credibility of the ASCAP investigator and given the improvised nature of the songs in question).

Therefore, the Court concludes that defendants are liable, jointly and severally, under 17 U.S.C. § 501, for their authorized performances of plaintiffs' eight Copyrighted Works on the evening of May 30-31, 2008.

### C. Damages and Injunctive Relief

In accordance with 17 U.S.C. §504(c), the Court finds that plaintiffs are entitled to the following statutory damages: $4,500 for each of the eight infringements, for a total award of $36,000. Plaintiffs are also entitled to a permanent injunction, under 17 U.S.C. § 502(1). Defendants are order to restrain from publicly performing the Copyrighted Works without plaintiffs' authorization. Finally, the Court finds that plaintiffs may recover their costs, including reasonable attorneys' fees.

## IV. CONCLUSION

In accordance with the foregoing, the Court DENIES defendants' motion for summary judgment, and GRANTS plaintiffs' motion for summary judgment. Plaintiffs are directed to submit a proposed form of judgment and permanent injunction consistent with this order.

IT IS SO ORDERED

Dated: March 18, 2010

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE